IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL COHEN,

Defendant.

No. C 10-00547 CRB

**ORDER SETTING BAIL**

IT IS HEREBY ORDERED THAT the Defendant Samuel Cohen be released from custody upon the satisfaction of the following conditions,[1] pursuant to Title 18 U.S.C. § 3142:

1. The Defendant will sign a $10 million personal recognizance bond that is co-signed by his wife, Stacy Cohen, and by his daughter, Danielle Cohen. Defendant must appear before the general duty magistrate judge for the Central District of California in order to execute the bond. Defendant's wife and daughter must also appear before the general duty magistrate judge for either the Central District of California or the Southern District of New York in order to execute the bond. The Defendant and his wife and daughter are to use the standard NDCA bond form, which should indicate that "The following

---

[1] All of the conditions that can be satisfied prior to Defendant's release must be so satisfied, including conditions 1, 6, 11, 18, 19, 20 and 21, and Defendant shall execute the attachments set forth in this Order.

conditions also apply: All conditions contained in the Order Setting Bail of August 27, 2011 in CR-10-0547 CRB."

2. Upon his release from jail, Critical Solutions will immediately fit the Defendant with an electronic monitoring device. Critical Solutions, Pre-trial Services, and the FBI will all be given access to the GPS monitoring data on a real time basis.

3. Defendant will be transported from jail directly to the Santa Monica apartment of his wife by two federal agents designated by the United States Attorney's Office and by a private security guard from Critical Solutions. The government may choose any federal agents it would like, and shall be notified at least 24 hours in advance of this transportation. Prior to his exit from the vehicle used to transport Defendant from the Metropolitan Detention Center – Los Angeles to his wife's apartment, the Defendant will be released from any handcuffs, chains, or other physical restraints.

4. The Defendant will remain in his wife's apartment at all times of day and night, except (a) to travel to the offices of his counsel, Bird Marella, between the hours of 9:00 a.m. and 1:00 p.m., Monday through Friday, (b) to travel to San Francisco to attend court hearings and trial in this action, and (c) as otherwise authorized by this Court. Whenever the Defendant leaves his residence, he will be accompanied at all times by an armed security guard supplied by Critical Solutions – Protective Services Group, Inc. ("Critical Solutions"), to be paid for by the Defendant's friends or relatives. Critical Solutions will provide the government with a list of the names of employees (with dates of birth and social security numbers) who will be responsible for guarding the defendant, contact information for those employees while they are guarding the defendant, and the schedule for those employees with respect to when they will be assigned to guard the defendant.

5. From the very moment of his arrival at his residence, the Defendant's home detention will be secured by on-premises armed security guards, supplied by Critical Solutions and paid for by the Defendant's friends or relatives, on a 24-hour basis. Critical Solutions will use GPS tracking devices. *The written protocol for Critical Solutions is attached as Ex. A.*

6. The entire cost of supplying the armed security guard for the time period of August 26, 2011 through October 31, 2011, estimated at approximately $80,400, will be paid in advance of the Defendant's release directly to Critical Solutions, and a receipt will be submitted to the Clerk of the Court for the Northern District of California. In the event that the period of pre-trial release is extended beyond October 31, 2011, the Defendant will pay Critical Solutions in advance for 30 days' worth of Critical Solutions's services, and submit a receipt to the Clerk of the Court.

7. Defendant will give his express consent in writing to "temporary preventative detention and the use of reasonable force" by the armed security guards, to thwart any attempt to flee. *Defendant's consent to "temporary preventative detention and the use of reasonable force" is attached as Ex. B.*

8. Contemporaneous with the Defendant's return to his residence, Government agents, with Defendant's consent and assistance, will remove from the premises any and all internet-enabled computers, cell phones, modems, and any other means by which the defendant may communicate electronically except by land-line telephone, as well as anything that might serve as a weapon. The devices to be removed include any such devices belonging to Defendant's wife. Such devices are barred from Defendant's residence without exception; Critical Solutions is tasked with ensuring that this condition is complied with on an ongoing basis.[2] In order to review discovery, the Defendant will be permitted

---

[2] Defendant informs the Court that it is possible to ensure that the Defendant's computer lacks internet access without accessing any of the content on Defendant's computer. See dkt. 187.

3

to retain (a) a computer that has been modified to prevent it from connecting to the internet, and (b) a printer.

9. Defendant will maintain at his residence throughout the period of pretrial release a land-line telephone that has no call forwarding, modem, caller ID, call waiting, or portable cordless telephone connection. Defendant will consent to the monitoring of his land-line telephone, other than his calls with counsel. Defendant will consent to the government installing any appropriate equipment to accomplish this monitoring. *Defendant's consent to the monitoring of his land-line telephone is attached as Ex. C.*

10. Any visitors to Defendant's residence, with the exception of his counsel from Bird Marella, will be screened and searched, and must be pre-approved, expressly and in writing, by Pre-trial Services, after consultation with the United States Attorney's Office for the Northern District of California.

11. Defendant will possess no travel documents and will surrender any travel documents still in his possession, including his Israeli and United States passports.

12. Promptly upon Defendant's return to his wife's apartment, if not sooner, the armed guards, or a service employed by them at Defendant's expense, will arrange to have an alarm placed at the entry to any and all balconies at defendant's wife's apartment, so that he cannot enter the balcony without the alarm sounding. However, the guards will have access to a device for disarming the alarm, and are permitted to disarm the alarm and permit the Defendant, at his request, to enter the balcony, provided that at least one armed guard is with the Defendant on the balcony at all times that the Defendant is on the balcony.

13. Defendant will be subject to strict supervision by Pre-trial Services.

14. On September ___, 2011, the Defendant will be permitted to travel to San Francisco to prepare for and attend trail in this action. The Defendant will be

4

transported to San Francisco by one security guard supplied by Critical Solutions, who will sit adjacent to the Defendant on the plane. Defendant will reside in San Francisco at a residence, the address of which will be provided in advance to Assistant United States Attorney Jeffrey Finigan and to the Court.

15. Once Defendant's residence in San Francisco is identified, the Court will reexamine Defendant's bail conditions.

16. Barring any revisions by the Court at that time, Defendant's bail conditions in San Francisco are as follows. During the time that he is in San Francisco, the Defendant will remain at this residence at all times of day and night, except to attend court hearings and trial in this action and as otherwise authorized by the Court. The Defendant's detention in this residence will be secured by the on-premises armed Critical Solutions guard and will be subject to the same restrictions outlined above in paragraphs 8, 9 and 10. Whenever the Defendant leaves this residence, he will be accompanied by an armed security guard supplied by Critical Solutions.

17. Defendant's wife will consent to and abide by the conditions outlined above in paragraphs 8, 9, and 10. *Defendant's wife's consent is attached as Ex. D.*

18. Roger McAulay will provide documentation establishing an enforceable claim against his home, and post $600,000 in equity in his home.

19. Defendant will post all of his personal property held in storage. The property will be transferred to the custody of a receiver or a bail bondsman. *A list of Defendant's personal property is attached as Ex. E.*

20. Defendant will post all money in all accounts over which he has control, in its entirety. The Defendant's wife and his daughter, as co-signers of the Defendant's personal recognizance bond, shall each submit declarations to the Court specifying any and all accounts over which she has control, the location of such accounts, the account numbers, and the amount of money contained in those accounts.

21. Defendant will waive his extradition rights.

**IT IS SO ORDERED.**

Dated: August 26, 2011

CHARLES R. BREYER  
UNITED STATES DISTRICT JUDGE